**REMAND; AFFIRM and Opinion Filed July 15, 2022**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-21-00901-CR**

**BRIAN DANIEL WHITE, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 199th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 199-83074-2019**

## MEMORANDUM OPINION

Before Justices Schenck, Osborne, and Smith
Opinion by Justice Smith

Appellant Brian Daniel White was convicted by a jury of two counts of indecency with a child by contact. *See* TEX. PENAL CODE ANN. § 22.11(a)(1), (c). The jury assessed his punishment at ten years' confinement for Count I and at eight years' confinement for Count II. In two issues, appellant argues that the trial court erred in admitting testimony vouching for the truthfulness of the complainant's outcry and in admitting hearsay testimony and expert opinions from a witness who was not qualified to give expert opinions. For the reasons discussed below, we

remand this case to the trial court for the limited purpose of correcting its judgment as to Count I, and otherwise affirm the judgments of the trial court.

## Background

Appellant was charged with intentionally and knowingly causing the penetration of O.O.'s sexual organ with his finger (Count I) and engaging in sexual conduct by touching her breast (Count II). Appellant pleaded not guilty to both counts, and the case proceeded to trial.

The evidence at trial showed that appellant's daughter, B.W., and O.O. were best friends. They often spent the night together. On one occasion, when O.O. was thirteen years old, appellant put his hand under her shirt and touched her breast. O.O., appellant, and B.W. were in the living room watching scary movies. O.O.'s younger sister, appellant's younger daughter, and appellant's mother were in other rooms. B.W. fell asleep on O.O.'s arm while watching the movie; they were on the couch and O.O. was sitting between B.W. and appellant. After B.W. fell asleep, appellant started scooting closer to O.O. She tried to scoot closer to B.W. but there was no room because B.W. was on her arm. When he touched her breast, she was shocked and felt frozen; she did not know what to do. Appellant then moved his hand down to her "private" and touched her over her underwear. She felt his fingers moving in fast small circles near the top. He asked her if she liked it. She was scared and wanted to go home.

O.O. eventually got up from the couch, attempting to get away. She went to the bathroom, but he followed her. He continued to follow her as she checked on her sister, checked to see if her phone was charged, and then went back to the living room to wake up B.W. so they could go to sleep in B.W.'s room. Appellant followed her into B.W.'s room and tried to get them to come back to the living room. They told him no, and he eventually left B.W.'s room. O.O. called her parents, but they did not answer so she went to sleep.

Her father testified that, after the sleepover, O.O. became very reclusive and hardly ever left her bedroom, which was uncommon for her. She went from spending almost every day with appellant's daughter to barely communicating with her. A few months later, during a check of her cell phone, her father found search history that concerned him. O.O. tried to prevent her father from even looking at her phone; she was scared he would find her searches for definitions of sexual abuse. She began crying as soon as he started looking at it. O.O. told her mom what happened with appellant, which led to a police investigation and, ultimately, appellant's arrest.

The jury found appellant guilty of indecency of a child by contact (touching O.O.'s genitals with his hand), the lesser included offense of aggravated sexual assault of a child under fourteen years of age as charged in Count I of the indictment. The jury found him guilty of Count II as charged—indecency of a child by touching O.O.'s breast. The jury assessed his punishment at ten years' confinement for Count

I and at eight years' confinement for Count II. The trial court sentenced him accordingly, and he appealed.

**Commenting on the Truthfulness of Another Witness**

In his first issue, appellant argues that the trial court erred in admitting the testimony of Lisa Martinez, the Director of Case Management and Forensic Services at the Children's Advocacy Center of Collin County, about whether she saw any signs of exaggeration or any red flags when she viewed the complainant's forensic interview. Appellant asserts that such testimony was inadmissible because it was an opinion as to the truthfulness of the child complainant. He argues that he was harmed by its admission because credibility was the central issue in the case.

Martinez generally explained the training and education that forensic interviewers completed and how forensic interviews were scheduled and conducted, specifically that a forensic interviewer asked non-leading questions and stayed neutral during the interview. She also explained that forensic interviewers were trained to look for "red flags" during the interview, such as a lack of sensory details, inconsistencies, and evidence of coaching. Martinez did not conduct O.O.'s forensic interview, nor was she present for the interview; however, she reviewed the forensic interview and, as a qualified forensic interviewer herself, testified that the forensic interviewer conducted the interview in a proper way. She further testified that O.O. gave general and specific details about what happened, including sensory details, and that O.O. was consistent throughout the interview. Defense counsel objected

when Martinez was asked if she saw any signs of exaggeration while she was watching the video. Counsel argued that such question "call[ed] for the witness to make a conclusion that would be the province of the jury." The trial court overruled the objection and stated, "The jury will decide for themselves whether they believe these allegations or not." At the end of her direct examination, the State asked, "In this interview did you see any red flags?" Martinez answered, "No," and defense counsel objected, "That calls for a comment on the evidence." The trial court again overruled his objection.

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). We reverse a trial court's ruling only if it is outside the "zone of reasonable disagreement." *Id.* If a trial court's decision is correct under any theory of law applicable to the case, we will uphold it. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

Direct opinion testimony about the truthfulness of another witness is inadmissible as "it does more than 'assist the trier of fact to understand the evidence or to determine a fact in issue'; it decides an issue for the jury." *Yount v. State*, 872 S.W.2d 706, 709 (Tex. Crim. App. 1993) (op. on reh'g) (citations and emphasis omitted). There is a fine line between helpful expert testimony and impermissible comments on credibility. *Schutz v. State*, 957 S.W.2d 52, 60 (Tex. Crim. App. 1997).

"Evidence that corroborates does not involve the character of a witness for truthfulness." *Cohn v. State*, 849 S.W.2d 817, 820 (Tex. Crim. App. 1993).

Martinez's testimony describing the "red flags" that forensic interviewers are trained to look for and her testimony that O.O. did not exhibit any of those red flags or signs of exaggeration during her forensic interview is akin to the social worker's testimony in *Schutz* describing behaviors that indicate manipulation and testifying that the complainant did not exhibit such traits. *See* 957 S.W.2d at 56, 73. The Court of Criminal Appeals held that such testimony did not constitute a direct comment upon the truthfulness of the complainant's allegations. *Id.* at 73. This Court has also held that such testimony is admissible and not a direct comment on a complainant's truthfulness. *See, e.g.*, *Granados v. State*, No. 05-17-01301-CR, 2019 WL 1349510, at *1 (Tex. App.—Dallas Mar. 26, 2019, no pet.) (mem. op., not designated for publication) (citing *Schutz* and other Dallas Court of Appeals cases concluding same). Therefore, we conclude that the trial court did not abuse its discretion in admitting Martinez's testimony. We overrule appellant's first issue.

## Admissibility of Other Testimony

In his second issue, appellant argues the trial court erred in admitting Martinez's hearsay testimony regarding the complainant's outcry and that Martinez testified about the complainant's body language and demeanor when she was not qualified to do so. He also appears to argue that Martinez's testimony violated the

confrontation clause and, like his argument in his first issue, vouched for the credibility of O.O.

As the State points out, appellant's second issue is multifarious because it raises multiple complaints and grounds for reversal based on different legal theories. *See Davis v. State*, 329 S.W.3d 798, 803 (Tex. Crim. App. 2010). However, in the interest of justice, we will review his complaints.

Appellant quotes three specific questions in his brief that defense counsel objected to at trial but that the trial court overruled and allowed Martinez to answer: (1) "Did she make an outcry of sexual abuse?"; (2) "State's Exhibit No. 8, is that an example of where she could show where her friend was sleeping on her arm?"; and (3) "And then State's Exhibit No. 10. Did her body language change when she was talking about what had happened to her?" Appellant objected to each of these three questions on hearsay grounds and objected that questions (1) and (3) denied his right to confront and cross examine. He did not object that Martinez was unqualified to answer any of these questions[1] or that such answers were a comment on the

---

[1] Appellant did object that Martinez was not qualified to make an opinion when the State asked, "When you were watching the interview, what was [O.O.]'s body language like during that interview?" However, appellant does not specifically complain about that question or Martinez's response in his brief. Furthermore, the question merely called for Martinez's observations. "Just as any lay witness, an expert may testify to events that he has observed, such as the demeanor of a child victim during out-of-court statements." *Schutz*, 957 S.W.2d at 70 n.8.

truthfulness of O.O.[2]

First, any complaint that Martinez's testimony violates the confrontation clause is without merit because O.O. testified at trial. "The Confrontation Clause is not offended if the declarant of a testimonial statement is available and later testifies at trial." *DeLeon v. State*, No. 02-12-00629-CR, 2014 WL 3953902, at *5 (Tex. App.—Fort Worth Aug. 14, 2014, pet. ref'd) (mem. op., not designated for publication). Second, even assuming the trial court erred by allowing Martinez to testify that O.O. made an outcry over defense counsel's hearsay objection, such error does not constitute reversible error because the same or similar testimony was admitted through other witnesses without objection. "[O]verruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling." *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998).

The officer who interviewed appellant and the sexual assault nurse who examined O.O. both testified, without objection, that O.O. made an outcry. Moreover, prior to Martinez being asked whether O.O. made an outcry of sexual

---

[2] Appellant presents the following argument in his brief in discussing what we have labeled question (3):

> These were not merely observations of the complainant's demeanor; they were statements corroborating her outcry of sexual abuse and bolstering her testimony with unqualified "expert" analysis. That is to say, Martinez's testimony established the complainant's hearsay statement as fact, then proceeded to substantiate it with unqualified opinion about her body language and demeanor.

abuse, Martinez detailed the forensic interview process, explained the meaning of "outcry," explained why children's outcries are often delayed, testified that she watched O.O.'s forensic interview, and testified that O.O. was able to give general and specific details about what happened to her, including sensory details. Thus, by the time the State specifically asked Martinez whether O.O. made an outcry, it was clear by her unobjected-to testimony that O.O. had. Therefore, because other testimony informing the jury that O.O. made an outcry of sexual abuse was admitted without objection, any error in admitting Martinez's testimony was harmless.

The same is true as to the State's question regarding State's Exhibit No. 8 and whether it was "an example of where [O.O.] could show where her friend was sleeping on her arm." Appellant did not object to the State's introduction of Exhibit No. 8 itself, which was a screenshot of O.O. in the forensic interview showing with her hand where appellant's daughter fell asleep. O.O. also testified, without objection, that appellant's daughter fell asleep on her arm and showed the jury where she was positioned. And, before specifically asking Martinez about Exhibit No. 8, Martinez testified that O.O. was able to do hand motions or demonstrations during her interview, such as showing the interviewer where her friend was sleeping. Thus, any error in allowing Martinez to answer, "Yes," to this question was harmless because the same or similar testimony also came in without objection. *See id.*

We reach the same conclusion with regard to the third question quoted above in which the State asked Martinez whether O.O.'s body language changed when she

was talking about what happened to her. During Martinez's general testimony about forensic interviews, she testified without objection that "getting to see what they're like during neutral subjects can be very important in case their demeanor or their body language changes when you go into the abuse scenario." Appellant did object when she was asked what O.O.'s body language was like during the interview but did not object when the State asked if her body language changed during the interview. Martinez answered, "Yes," and in response to the State's question as to how it changed, she explained, "She would squeeze her legs tight and speak in more of a whisper and kind of lower her head a little bit more." The State subsequently showed Martinez Exhibit Nos. 9 and 10, which were unobjected-to screenshots of O.O. during the forensic interview. When showing Exhibit No. 9, the State asked if O.O.'s body language was more open during part of the interview to which Martinez answered, "Yes." The State then showed Martinez Exhibit No. 10 and, over Appellant's objection, Martinez described how O.O.'s body language changed when she began talking about what happened to her:

> She started putting her hands between her legs. She was looking a little bit like - - not looking [the forensic interviewer] straight in the eye with her eyes completely open. She was kind of looking down.
> And then she - - you can't tell from here, but she was whispering a little bit more and she was squeezing her legs.

Martinez's prior testimony regarding O.O.'s change in demeanor, to which appellant did not object, was substantially similar to this testimony and, therefore, any error in

allowing Martinez to describe O.O.'s demeanor over appellant's objection was also harmless. *See id.*

We conclude that none of Appellant's complaints raised in his second issue require reversal. Therefore, we overrule Appellant's second issue.

## Errors in Judgment – Count I

Although not briefed by either party, we have reviewed the judgments and found that the judgment of conviction for Count I provides that Appellant was convicted of aggravated sexual assault of a child, a first-degree felony. This is incorrect. Although Appellant was charged by indictment with aggravated sexual assault of a child, he was convicted for the lesser included offense of indecency with a child by contact, a second-degree felony. *See* TEX. PENAL CODE ANN. § 21.11(a)(1), (c), (d).

Therefore, we remand this case to the trial court for the limited purpose of correcting its judgment as to Count I. The trial court shall correct the judgment as follows: under "Offense for which Defendant Convicted," delete "AGG SEXUAL ASSAULT CHILD" and replace it with "INDECENCY W/CHILD SEXUAL CONTACT." Under "Statute for Offense," delete "22.021(a)(1)(B)" and replace it with "21.11(a)(1), (c), (d)." And, under "Degree of Offense," delete "1ST DEGREE FELONY" and replace it with "2ND DEGREE FELONY."

## Conclusion

We remand this case to the trial court for the limited purpose of correcting the judgment for Count I as specified in this opinion. We otherwise affirm the judgments of the trial court.

/Craig Smith/
CRAIG SMITH
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
210901F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BRIAN DANIEL WHITE, Appellant

No. 05-21-00901-CR V.

THE STATE OF TEXAS, Appellee

On Appeal from the 199th Judicial District Court, Collin County, Texas Trial Court Cause No. 199-83074-2019.

Opinion delivered by Justice Smith. Justices Schenck and Osborne participating.

Based on the Court's opinion of this date, we **REMAND** this case to the trial court for the limited purpose of correcting the judgment for Count I. We otherwise **AFFIRM** the judgments of the trial court.

Judgment entered this 15th day of July 2022.